[No. 3245.   Decided November 10, 1899.]

F. O. CHEZUM, *Appellant,* v. JOHN G. McBRIDE *et al.,*
*Defendants,* OGDEN BOLTON, *Respondent.*

ALTERATION OF DEED—RATIFICATION BY GRANTOR.

An alteration made in a deed and in the record thereof will be
presumed to have been ratified by the grantor, when the evidence
tends to show that it was done with his consent, and when it
appears that he always recognized the title of his grantees to the
premises covered by the altered deed, and never himself, or
through his successors, exercised any act of ownership over the
lands in controversy.

LACHES.

An action to quiet title to land is barred by the laches of
plaintiff and his grantors, when it appears that defendant and
his grantors entered into possession of the premises under a deed
from the common grantors of both parties, although the deed did
not cover all the land of which possession was taken, that they
cleared the timber therefrom, made improvements thereon, per-
formed many acts of ownership, paid taxes thereon continuously
for a period of twenty-five years, and retained possession during
all that time without any adverse claim being asserted by plain-
tiff's grantors.

Appeal from Superior Court, Pierce County.—Hon.
JAMES A. WILLIAMSON, Judge.   Affirmed.

*G. L. McKay* and *Ira A. Town,* for appellant.
*O. G. Ellis* and *A. H. Denman,* for respondent.

The opinion of the court was delivered by

GORDON, C. J.—This action was commenced in 1896
for the purpose of quieting title to certain premises in the
city of Tacoma.   Numerous parties were made defendants,
but the respondent, Ogden Bolton, was the only answering
defendant, and this controversy is limited to the particular
premises claimed by him.

The premises in controversy are a part of the S. S. Hilton pre-emption claim, located in sections 8 and 9, township 20 north, range 3 east of the Willamette meridian, in Pierce county, and were patented to the said Hilton in September, 1869. The record does not make it appear when final proof was made by Hilton, but in January, 1869, some eight months prior to the issuance of the patent, Hilton executed and delivered to William and Albert Lane a quit claim deed conveying "that land in Pierce county, Washington Territory, described as follows, to-wit, being forty (40) acres of section nine (9); said forty acres running east and west, joining the north side of McCarver's and Starr's eighty-four acres, and the west side of DeLano's donation claim." This deed was recorded with the auditor of Pierce county. Subsequently, and within a short time after its execution, the words "& 8 eight" were inserted after the words "section nine (9)" in the description contained in the deed, and on the margin of the deed were added the words "Commencing at N. E. corner of McCarver's and Starr's 84 acres and running north far enough to make 40 acres by running west to the west line of Hilton's claim, and thence south to McCarver's and Starr's claim." And the record in the auditor's office was amended so as to contain the interlineation and addition made in and upon the deed. The respondent claims through this deed. In 1873 Hilton executed and delivered to Richard W. Ryerson a quit claim deed to all the land included in his pre-emption claim above described. The appellant claims through this last mentioned deed.

Respondent's answer contains a general and specific denial of the complaint, and also alleges affirmatively, and by way of cross-complaint, title in the respondent to the premises here in controversy. There was a trial, which

resulted in the decree in defendant's favor, from which the plaintiff has appealed.

The court found that the deed from Hilton to the Lanes was drawn by William L. Allison, clerk of the United States district court for the territory of Washington, on the application of Hilton and William L. Lane; that, upon discovering that it did not describe "the forty acres as lying in section 8 as well as in section nine," Lane went to Hilton to have the deed corrected, and, after a conference with him, took the deed to Allison, who then made the changes in the original already set forth herein; and that afterwards, upon the representations of Allison and Lane, the auditor of the county made the record to correspond with the corrected deed. Also,

".That said S. S. Hilton made no claim adverse to the claim of William Lane and Albert Lane to the forty acres in said sections eight and nine in his said preemption claim lying north of said eighty-four acres of McCarver and Starr and that the said S. S. Hilton was afterwards employed by the said Lanes upon that portion of said forty acres lying in section eight to assist them in clearing and removing the timber from that portion of said forty acres lying in section eight and that the said S. S. Hilton afterwards spoke of said forty acres lying north of said eighty-four acre tract of McCarver and Starr in both sections eight and nine as Lanes' forty acre tract and stated that he had sold forty acres to said Lanes."

" That said William Lane and Albert Lane took possession of said forty acres in sections eight and nine as conveyed by the said corrected deed, and paid all taxes upon said forty acres until the year eighteen hundred and seventy-three, when they conveyed thirty acres, including the land in controversy in this action, by deed dated the second day of June, eighteen hundred and seventy-three, to C. H. Spinning and that said C. H. Spinning and wife, by good and sufficient deed, afterwards conveyed the twenty acres of land so conveyed to him by the said Lanes, said twenty acres including the land in controversy in this action, to William P. Byrd."

"That said William P. Byrd platted the twenty acres so conveyed to him as 'Byrd's Addition to the City of Tacoma,' subdividing the said twenty acres into lots and blocks and dedicated the streets to the public, all as shown upon the plat of said addition recorded on page '20' in Book '1' of the record of plats in the office of the auditor of said Pierce county and the corrected and amended plat of said addition, recorded on page '21' of Book '1' of said plat records; that numerous lots were sold and conveyed according to said plat, and residences built upon said lots and occupied by many persons holding adversely to the plaintiff in this action and those from whom plaintiff claims to have deraigned title."

"That the said William P. Byrd conveyed lots seventeen, eighteen and nineteen in block five of said Byrd's Addition to Ira Cogswell by deed dated the seventh day of January, eighteen hundred and seventy-four, and the said Ira Cogswell conveyed the said three lots to Myron Cogswell; that said Ira Cogswell and Myron Cogswell paid the taxes on said land and were seized of the same without any adverse claim or possession being made or had on the part of any one for fourteen years, to-wit: from the year eighteen hundred seventy-four until the year eighteen hundred eighty-seven and until the said Myron Cogswell and wife conveyed lot seventeen and the south half of lot eighteen in said Block five of Byrd's Addition to E. W. Ely by deed dated the twenty-third day of July, eighteen hundred and eighty-eight."

"That said E. W. Ely held said lot seventeen and the south half of lot eighteen without any adverse claim or possession being had or made against him until he conveyed the same by deed executed by himself and wife in favor of E. Platter on the twenty-third day of February, eighteen hundred and eighty-nine."

"That said E. Platter took actual possession of said lot seventeen and the south half of said lot eighteen, built a small house thereon and resided therein until the said *until said* Platter afterwards sold and conveyed the said lot seventeen and the south half of lot eighteen to John G. McBride by deed dated the ninth day of May, eighteen hundred and eighty-nine."

36—21 WASH.

"That said John G. McBride built the house now stand-
ing on said lot seventeen and the south half of said lot
eighteen; that said John G. McBride resided upon said
lot seventeen and the south half of lot eighteen most of the
time and the remaining time rented the same until the
eighth day of April, eighteen hundred ninety-five."

"That the defendant Ogden Bolton, as the owner of a
certain mortgage executed by said John G. McBride and
wife in favor of the Lombard Investment Company upon
said lot seventeen and the south half of lot eighteen fore-
closed said mortgage in an action in the superior court of
the state of Washington for Pierce county, being case No.
11,962, entitled Ogden Bolton, plaintiff, vs. John G. Mc-
Bride and others, defendants, and pursuant to decree ren-
dered in said foreclosure suit the said lot seventeen and the
south half of lot eighteen were on the eighth day of April
eighteen hundred ninety-five sold at sheriff's sale by the
sheriff of Pierce county, Washington, to the defendant,
Ogden Bolton, and the said sale having been confirmed by
the court and there having been no redemption of said
mortgaged premises within the time allowed by law, the
said sheriff executed a deed, dated the eleventh day of
April, eighteen hundred ninety-six, pursuant to law in
such cases made and provided, conveying said mortgaged
premises to the said Ogden Bolton."

The court also found that, after the execution of his deed
to the Lanes, Hilton made no attempt to disturb the posses-
sion, seizin or title of any of the grantees claiming under
said deed, and had no possession of any portion of the
forty acres so deeded; that neither Hilton, Ryerson, nor
respondent Chezum paid any taxes upon said forty acres,
or made any improvements on the land, or ever went into
possession thereof, prior to the commencement of this
action.   It is earnestly insisted by appellant that the evi-
dence does not justify the findings, but an examination
of it has satisfied us that it was sufficient, and that the
findings are fully supported.

There are two grounds upon which the decree must be
affirmed:   (1).  It sufficiently appears from the evidence

and the findings of the court that the corrections and additions in and to the deed from Hilton to Lane were fully ratified by Hilton, and the evidence tends strongly to show that they were made with his consent. The record at all times afforded full notice to appellant and to his grantors of the claim of respondent's grantors. (2). It also sufficiently appears that the respondent's grantors went into possession of the premises under the deed from Hilton, cleared and removed timber therefrom, and, while they at no time actually occupied the same, they made improvements, and performed many acts of ownership, and also paid taxes thereon continuously for a period of upwards of twenty-five years; that during this entire period neither the appellant nor his grantors made any claim to the premises adverse to that of respondent and his grantors. They never gave in the land in controversy to the assessor for taxation, made no attempt to possess themselves of any part of it, and it would be inequitable and unconscionable to permit them, after the lapse of so long a period, without any legal excuse or reasonable explanation, to dispossess the respondent.

"The law of laches, like the principle of the limitations of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the memory and life of witnesses, instruments of evidence, and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose and welfare of society. A departure from it would open a field to the evils intended to be excluded." *Brown v. Buena Vista County*, 95 U. S. 157.

The action is barred by the laches of appellant and his grantors.

"Delay in the assertion of a right unless satisfactorily explained, even when it does not constitute a positive statutory bar, operates in equity as evidence of assent, acquiescence or waiver." *Mullan's Admr. v. Carper*, 37 W. Va.

215 (16 S. E. 527); *Parker v. Dacres,* 130 U. S. 43 (9 Sup. Ct. 433); *Richards v. Mackall,* 124 U. S. 183 (8 Sup. Ct. 437); *Horr v. French,* 99 Iowa, 73 (68 N. W. 581); *Bryant v. Groves,* 42 W. Va. 10 (24 S. E. 605).

The decree is affirmed.

DUNBAR, REAVIS, ANDERS and FULLERTON, JJ., concur.